We will now go to the calendar and the first case is United States v. Benjamin. Each side have two minutes of uninterrupted questioning and I should say uninterrupted statements and then questioning and I will begin the questioning on each side. Please proceed. Thank you, Your Honor. Good morning. Martha Selzman on behalf of the appellant, Mr. Benjamin. Can you hear me well? Yes. Thank you. Your Honor, there are a number of errors in this case starting with the fact that the government has failed to prove a sex trafficking conspiracy between Mr. Benjamin and Mr. Walsh. There was insufficient evidence of the conspiracy. The government has a number of factors which they constitute the conspiracy, none of which were sufficiently proven by the government. Certainly, the government really only proved that both men may have each separately engaged in sexually trafficking and this is not what makes a conspiracy. There was no joint venture here between the two men explicitly or implicitly. In fact, the other individual, Mr. Walsh, did not even recall discussing prostitution with my client and certainly the government has failed to prove a meeting of the mind and no agreement between the two men regarding sexually trafficking of minors. In addition, the venue of this action was misplaced in the Southern District of New York. The court is asked to review this de novo. There was absolutely no evidence that any iota of the crime occurred in the Southern District of New York. The only connection that the government attempted to make to the Southern District of New York was that the Westchester County, there was no Facebook messages that were introduced in evidence. The victim, one, told the case agent that she first met the defendant in Queens and there was absolutely no evidence presented that any of the conduct and furtherance of sex trafficking occurred in the Southern District. There was really only one site of the crime, which was in the Eastern District of New York. Thank you. Your two minutes have expired. This is Judge Katzmann. I have some questions, if I might. Certainly, Your Honor. To your point about whether the government failed to introduce sufficient evidence that Benjamin and Walsh agreed to sexually traffic minors, as I understand the record, Walsh testified that he sexually trafficked minors with Benjamin and said they posted commercial sex advertisements and discussed how to make those advertisements more effective. You also have two minors who testified that they engaged in prostitution at Benjamin's or Walsh's behest. Why is this evidence, in your view, insufficient or any rational jury to have found Benjamin guilty of conspiracy? Well, as I read the record, Your Honor, victim one was really being trafficked by defendant Benjamin. Victim two was trafficked by defendant Walsh. The evidence as to whether or not they did it together, the only evidence that I recall in the record is that Walsh testified that he sat next to Benjamin while Benjamin showed him what to do because Walsh wanted to traffic. That doesn't necessarily mean those two men trafficked together or that they had an agreement to share in the trafficking. They were doing it, as I read the record, separately, although Walsh may have gone to Benjamin to ask him for information about how to do that. The testimony by victim two was the only testimony that she had anything to do with Benjamin was that there was a discussion at some point in time where initially she said that Walsh raised prostitution and Benjamin wasn't involved. Later on, she said it was a group discussion that included Benjamin, but there was no evidence as to what Benjamin even said, if I recall the record correctly, in that discussion. The fact that two people may be associated and separately handling their own criminal ventures does not make a conspiracy. Now, let me ask you, though, on your venue point. So here, as I understand it, a minor testified that Benjamin first approached her using Facebook Messenger in the fall of 2015 while she was living in a residential treatment center that was located in the Southern District of New York. The minor thought of Benjamin as her boyfriend. They discussed meeting in person. The minor went to her residence to Queens and met Walsh. And once in Queens, she began a sexual relationship with Benjamin and lived with Benjamin for the next two or three months. And during that time, Benjamin suggested that the minor engage in prostitution. Why isn't this evidence sufficient for a reasonable jury to find by a preponderance of the evidence that Benjamin recruited or enticed the minor while she resided in the Southern District of New York to engage in prostitution? And that venue was therefore proper for both convictions. Well, it would require the jury to take quite a week to determine what was in the mind of Benjamin at the time that he first started speaking with the victim. In addition, victim one also told the case agent that she first met Benjamin in Queens. And I refer the court to the transcripts at page 435 to 436. So there was a split in the evidence as to what occurred. There was absolutely no indication that she had any discussion with Benjamin about sex trafficking until maybe three days after, two or three days after she arrived in Queens County. And so it wasn't in her mind that he was enticing her. And the jury would have to make a leap of faith that this is something that was in his mind at the time. Judge Loyer? Yes, thank you, Judge Kastner. So I have a question about venue and then I have a question in respect to the venue issue. What about the effort to advertise on Backpage involving victim one? As I understand it, the venue would adhere if there was an advertisement on Backpage. Is that correct or is that wrong? I don't believe there was any information regarding where the advertising took place and whether or not there were no computer records submitted, if I recall correctly, as to that. But the venue is where the crime occurred. And if what they're talking about is where the situs of the criminal activity was, where she was trafficked, there was no evidence that she ever left the Eastern District to engage in any sexual conduct in any other place. In fact, she said she was engaging in sexual conduct in cars, on street corners, and then eventually in Mr. Walsh's home, I believe, which is also in the Eastern District of the state of New York. So none of the criminal activity occurred in the district. So as I understand it, the evidence was that Mr. Benjamin communicated with victim one while she was in the Southern District of New York. And then immediately after she arrived in Queens, he urges her to, and then I think tries to post on Backpage. Why couldn't a jury infer from the immediacy of that action that he was trying to groom her and entice her while she was in Westchester, in the Southern District of New York? Because there was no evidence of grooming or enticing. There was nothing in the record to suggest that. Why isn't the messaging back and forth, the Facebook messaging, evidence of grooming, or at least something that the jury could latch onto in a non-speculative way as evidence of grooming and enticing? I don't think the Facebook messages were ever introduced in evidence. It was just the statement of the victim that said that. Okay, but why isn't that enough? Because she indicated that the Facebook messaging had nothing to do with prostitution. She said that they were clearly just as though a young man and a woman exchanging an interest in each other, not have anything to do in grooming her, enticing her, nothing. There was just no evidence of that. That, it seems to me, is a reason why a jury might also conclude that she is a victim. Anyway, on the conspiracy charge, am I also right that there was some evidence that Mr. Benjamin asked Mr. Walsh to pick up the victim and also that they moved into Mr. Walsh's home? There was evidence that Mr. Benjamin asked Mr. Walsh to pick up the victim, but at that time, it was unclear as to the purpose of him picking it up, picking this young lady up. There was absolutely nothing in the record to suggest that Mr. Walsh believed he was picking her up because she was going to be sexually trafficked. There was nothing by the victim indicating that he picked her up and said anything to her about prostitution or anything of that nature. In addition, the move to Mr. Walsh's home occurred weeks later after she arrived in Queens. And the discussion with respect to prostitution occurred days after she arrived in Queens. So, any of the conduct relating to the sex trafficking, the attellant's position, occurred solely in the Eastern District of the state of New York. Thank you. I have some questions. Judge Walker, I just wanted to ask you about certain facts relating to the conspiracy charge. Didn't both Benjamin and Victim 1 move in with Walsh so that Victim 1 could take in-calls in furtherance of her prostitution? In other words, wasn't Walsh providing a place for them to operate? That's what she testified to, but I don't think there was any indication that that ever occurred. I don't believe that. And again, the fact that you used someone else's house to further something doesn't, again, mean that there was a meeting of the minds between Walsh and Benjamin. It appears that it might mean that Walsh was aware of what Benjamin was doing and allowed him to use his house. And all conspirators don't have to play exactly the same role in terms of the culpability. And the other question I have is, weren't they both in a conversation, both Benjamin and Walsh, when, with regard to Victim 2, they asked her whether she would engage in commercial sex? Well, in the conversation, the evidence was that initially Victim 2 said that Walsh and Victim 1 raised prostitution with her. It had nothing to do with Benjamin. Later on, she did say there was a group discussion, including Benjamin, but there was no evidence of what Benjamin said in that group discussion. Okay. We'll now hear from your adversary. Thank you very much, Your Honor. May it please the Court. My name is Jacob Gutwillig, and I'm an Assistant United States Attorney for the Southern District of New York. I represent the United States on this appeal and represent the United States at trial. I'll respond to the two main issues that Counsel for Appellant and the Court have focused on. First, with respect to the conspiracy count, the evidence at trial clearly established a conspiracy between Benjamin and his co-defendant, Lawrence Walsh, to engage in sex trafficking for many of the reasons that Your Honors have already identified. Benjamin's conviction on Count 1 was based on the testimony of three witnesses, Victim 1 and Victim 2, as well as Walsh and the advertisements for commercial sex posted online by Benjamin. Just to provide a few examples, Victim 1 and Walsh both testified that Benjamin dispatched Walsh to pick up Victim 1 from a particular McDonald's on Jamaica Avenue when she arrived in Queens. Victim 1's testimony that after about three weeks of engaging in prostitution from Benjamin's aunt's house in Queens, they went to Walsh in order to make more money. The conspiracy continued there. Walsh and Benjamin, Walsh testified about sitting next to Walsh. With respect to venue, Benjamin communicated with Victim 1, Victim 1 testified, while she was in the Southern District of New York. She thought that Benjamin was her, quote, boyfriend. She then traveled through Manhattan to Queens in order to meet Benjamin, and days thereafter, he enlisted her in prostitution for his benefit. The statute here is very broad. Recruits, entices, harbors, transports, provides, or solicits by any means, communicating with Victim 1 by Facebook, causing her to think she had a romantic interest, according to Victim 1's testimony, while she was in the Southern District of New York, is really more than enough for a reasonable juror to find that Mr. Benjamin already had in mind the possibility of recruiting her, and therefore, that this was just a first step that's sufficient for venue purposes. I'd also note that there was testimony that Mr. Benjamin had used Backpage previously to advertise himself, so I think there's really, as the trial court observed, it's kind of an artificial distinction between saying that there was no specific recruitment and really the immediacy with which Victim 1 was trafficked by Benjamin upon her arrival in Queens. This is Judge Katzman. I have a question on the venue point. As I understand it, Benjamin and Victim 1 didn't discuss prostitution during these Facebook messenger conversations, and according to Benjamin, there were no acts of any kind upon which venue could be laid to the Southern District. As you know, that's their argument. How do you respond to the view that they didn't discuss prostitution during these Facebook messenger conversations, and so it's a bit of a reach to say that there's venue in the Southern District in this case? Thank you, Your Honor. So, I think I would return again to the idea that a reasonable juror could find that Benjamin already had that purpose in mind based on the context, based on the immediacy with which she was trafficked upon arriving, based on the fact that he had experience with Backpage, based on the fact that Walsh went to go get her as soon as she got to Queens, and I think that it doesn't need to—I would also point to the Court's recent decision in Purcell, and there, in a decision in July, the Court observed that both the defendant's act of enticement and the victim's interstate travel to perform commercial sex—and this was in the context of a 24-22 enticement charge—venues proper in both those locations. And I would respond in saying that evaluating the context, evaluating Victim 1's testimony that this happened on Facebook, it is a reasonable inference for the jury to draw that the purpose of the recruiting or the enticing or soliciting by any means—and again, I would remind the Court that the statute here is very broad. The sex trafficking statute could provide a reasonable basis for a jury to find that Benjamin had in mind the trafficking when he was communicating with Victim 1 via Facebook while she was in the Southern District. On the question of Benjamin's reputation as a swindler, your adversary, as I understand it, believes that—argues that it was an abuse of discretion by the District Court to admit testimony that Benjamin had a reputation in the community as a swindler. If there were error, what's the standard? Do we review the error for harmlessness? Why is any error on the part of the District Court harmless in this case with respect to Benjamin's reputation as a swindler? Yes, Your Honor. So, I think here the Court would review the admitted testimony for abuse of discretion and then harmless error. And I think here that the main point—well, a few. One is that the testimony was very brief. It was limited in scope, and it was stricken almost immediately. I'm sorry, Your Honor, you're talking about the admitted testimony. It was very limited in scope, and I would just say that with respect to harmless error, the other testimony from Victim 2 and really from all the witnesses—Victim 2 was at the time a 15-year-old victim of sex trafficking. The fact that she would refer to Benjamin as a swindler really pales in comparison to the quantum and the explicit nature of some of her other testimony with respect to what was going on. And I think that really the idea that brief testimony referring to him as a swindler, which is her opinion and goes to context with respect to why she did not want to go work for Benjamin despite his repeated attempts to recruit her to engage in sex trafficking for him, it really goes to context, and it's a far cry from some of the other testimony and really the weight of the evidence against Benjamin in Victim 2's testimony, from Victim 1's testimony, from Walsh's testimony, from the advertisements. Really, I think any error here would be harmless from admitting that if it were admitted improperly. Judge Loyer? How was Victim 2's state of mind relevant in this criminal prosecution where the only relevant state of mind, it seems to me, would be that of Mr. Benjamin and maybe Mr. Walsh? With respect to Victim 2's testimony, I think the state of mind I was referring to was why she did not decide to go work for Mr. Benjamin. And perhaps I misunderstand Your Honor's question, but the state of mind requirement, I think, for sex trafficking in minors is almost a strict liability standard in terms of a reasonable opportunity to observe. And I think that Victim 2's testimony is really just to explain why she didn't decide to go work for Benjamin directly in sex trafficking. All right. Thank you. Judge Walker? Yeah, I have no further questions. Thank you. Yes, one minute for rebuttal. Yes, Your Honor. I would like to address the issue of this Swindler comment and why it is not harmless in the context of this case. We have here a weak case on the sex trafficking conspiracy. We have the fact that the government elicited the evidence of the bad character in its case-in-chief before the defendant had interposed any defense of good character. Character itself was not an element of the crime here. There was no curative instruction. The character assassination, not only as a sex trafficker, but now also as a Swindler, based on the witness saying that she heard it on the street, not even that she knew it was a crime, experience. And it was not cumulative of any other evidence of character. It was the sole evidence of character in this case. But it was cumulatively unfair and prejudicial when taken together with Walsh's improperly admitted testimony that the defendant said, they got us now, which resulted in the denial overall of their trial. Thank you. Thank you both for your arguments. The court will reserve decision.